IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **MICHAEL D. FRAZIER,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) Case No.: 4:13-CV-757-VEH |
| | ) |
| **CITY OF GADSDEN,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael D. Frazier ("Mr. Frazier") initiated this employment dispute against Defendant City of Gadsden (the "City") on April 23, 2014. (Doc. 1). Pending before the court are the City's Motion for Summary Judgment (Doc. 15) (the "Rule 56 Motion") filed on May 2, 2014, and the City's Motion To Strike (Doc. 23) (the "Strike Motion") filed on June 6, 2014. For the reasons explained below, both the City's Rule 56 Motion and Strike Motion are **DENIED**. Alternatively, the City's Strike Motion is **TERMED** as **MOOT**.

### City's Rule 56 Motion

The court has reviewed the parties' respective supporting and opposing materials on the Rule 56 Motion. (Docs. 16-19, 21-22). In his complaint, Mr. Frazier, a white male, has asserted race discrimination arising under Title VII of the Civil

Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, against the City for failing to hire him for the position of police officer. (Doc. 1 ¶¶ 1, 11).

The record shows that Mr. Frazier has established a *prima facie* case of his race discrimination claim under both statutes[1] as, during the relevant time frame, the City hired several non-white applicants (*i.e.*, African-American applicants Montgomery, Sandridge, and Mostella) for the position that he also sought. *See, e.g., E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002) ("In a traditional failure-to-hire case, the plaintiff establishes a *prima facie* case by demonstrating that: (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." (citing *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999))); *see also Sledge v. Goodyear Dunlop Tires North America, Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) (setting forth *prima facie*

---

[1] Employment claims asserted under Title VII and § 1981 are analyzed in parallel fashion within the Eleventh Circuit. *See Brown v. American Honda Motor Co.*, 939 F.2d 946, 494 (11th Cir. 1991) ("The Supreme Court has held that the test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment causes." (citing *Patterson v. McLean Credit Union* , 491 U.S. 164, 185-87, 109 S. Ct. 2363, 2377-78, 105 L. Ed. 2d 132 (1989))); *see also Lincoln v. Board of Regents of University System of Georgia*, 697 F.2d 928, 935 n.6 (11th Cir. 1983) ("When, as in this case, the plaintiff predicates liability under Title VII on disparate treatment, the legal elements of the claim are identical to those of a claim under § 1981.").

elements of failure-to-hire claim).

Further, the City offers no reasonable challenge to Mr. Frazier's establishment of a *prima facie* case. The hiring of one white applicant, Tara Bates, occurring around this same period does not erase the existence of the City's subsequent non-white hirees. As the Eleventh Circuit has repeated recognized, "[t]he methods of presenting a *prima facie* case are flexible and depend on the particular situation." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079,1087 (11th Cir. 2004)). Additionally, Mr. Frazier has adduced sufficient evidence from which a reasonable fact finder could conclude that in the absence of being subjectively and improperly disqualified (due to his race) by the City, through its final decisionmaker, Chief John Crane ("Chief Crane"), Mr. Frazier would have remained on the eligibility roster for up to two years after he applied to become a police officer.

The City's strained efforts to render Mr. Frazier unqualified from a *prima facie* standpoint due to subjective criteria, while admitting that he was objectively qualified, flies in the face of binding Eleventh Circuit law and, if followed, would constitute reversible error. *See Vessels v. Atlanta Independent School System*, 408 F.3d 763, 769 (11th Cir. 2005) ("Rather, to demonstrate that he was qualified for the position, a Title VII plaintiff need only show that he or she satisfied an employer's

objective qualifications."); *id.* ("Specifically, we have made clear that the *prima facie* case is designed to include only evidence that is *objectively verifiable* and either easily obtainable or within the plaintiff's possession." (emphasis in original) (citing *Walker v. Mortham*, 158 F.3d 1177, 1192-93 (11th Cir. 1998))); *Vessels*, 408 F.3d at 769 ("This is particularly important because we have emphasized that subjective criteria can be a ready vehicle for race-based decisions." (emphasis added) (citing *Miles v. M.N.C. Corp.*, 750 F.2d 867, 871 (11th Cir. 1985))).

The City also misguidedly suggests that in order to sustain a *prima facie* case Mr. Frazier must show that "equally or less qualified persons outside his class (which is white) were considered for the position." (Doc. 16 at 21).[2] This is simply wrong. *See Walker*, 158 F.3d at 1193 ("In light of our own precedent and the decisions by the Supreme Court in *Burdine* and *Patterson*, we hold that district court in this case erred in imposing as part of the *prima facie* case a requirement that each plaintiff establish that the successful applicant for his or her coveted position was less than or equally qualified to hold the position.").

Instead, the City's briefing focuses primarily upon whether Mr. Frazier has adduced sufficient evidence of pretext pertaining to its articulated explanation(s) for not hiring him–Chief Crane found Mr. Frazier to be subjectively unfit for the position

---

[2] All page references to Doc. 16 correspond with the court's CM/ECF numbering system.

of police officer based upon his answers to certain questions contained on his job application.[3] Turning to the existence of pretext in the decision not to hire Mr. Frazier, the court determines that the record contains "'evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions.'" *See MacPherson v. University of Montevallo*, 922 F.2d 766, 776 (11th Cir. 1991) (quoting *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041,1045 (11th Cir. 1998)).

This evidence, taken together and in a light most favorable to Mr. Frazier which the court is obligated to do on summary judgment, includes, <u>but is not limited to</u>: (1) the City's giving a "shifting explanation for its actions[,]" *see, e.g., Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) (finding pretext in employer's termination decision by contrasting position taken at administrative level with that presented on appeal); and (2) comments made and actions undertaken by decisionmaker Chief Crane which reveal a racial animus <u>in the hiring of police</u>

---

[3] These subjective reasons, as Chief Crane indicated during his deposition, relate to Mr. Frazier's admissions (on his job application) that: (1) he had stolen property (*i.e.*, a street sign) with a friend when he was a minor; (2) he had taken some money (that was "laying around a relative's house") when he was a minor; (3) he had operated a motor vehicle under the influence of alcohol within the past 6 months; and (4) he had a record of several felony arrests. (Doc. 18 at 8-9 ¶¶ 19a-c). Concerning this last category, all charges against Mr. Frazier were eventually dismissed, and no conviction is on his record. (Doc. 18 at 9 ¶ 19c). Additionally, Lieutenant Michael Garigues testified that he understood from Chief Crane that a "'nol prossed' arrest would not be considered a disqualifying factor for police applicants." (*Id.* at 9 ¶ 19c); (*see also* Doc. 19-25 at 12 at 48 ("A nol prossed [arrest] would . . . have been looked over.")).

officers.

Concerning the first point, Mr. Frazier has shown that "the alleged subjective reasons for disqualification [of him] provided by Chief Crane during his 2013 deposition are utterly absent from the [C]ity's January 2013 EEOC position statement." (Doc. 18 at 36);[4] (*see also* Doc. 19-4 at 1-2 (copy of the City's EEOC position statement)). Instead, the City's administrative answer suggests that the hiring of (non-white) Officer Montgomery, one of Mr. Frazier's comparators, was handled differently (*i.e.*, in a more abbreviated manner) because he "was not a new recruit." (Doc. 19-4 at 2). In contrast to this particular part of the City's position statement, Chief Crane indicated during his deposition that a lateral hire "would have to submit the same lengthy application as a new recruit and be subject to the same Professional Standards background review for potential disqualifying reasons as a new recruit." (Doc. 18 at 37); (*see also* Doc. 17-8 at 135 (answering affirmatively to question about whether a lateral applicant like "Officer Montgomery would have to submit the same lengthy application")).

As for the second point, Mr. Frazier provides the following summary of racially-related comments and actions attributable to final decisionmaker Chief Crane that are supported by underlying evidence contained in the record:

---

[4] All page references to Doc. 18 correspond with the court's CM/ECF numbering system.

> In March 2012 Chief Crane told Captain Regina May that he had made "a commitment" to the civil service board "to hire more women and blacks" to the Gadsden Police Department. (May Depo. at 26). Soon thereafter, Crane asked May for the police applicant eligibility roster which she then obtained from the personnel board. (*Id.*). The roster sent by the personnel office listed only the names of the applicants. When May took this roster to Chief Crane he looked at it and then directed her "to identify who is black and who is white." (*Id.* at 26-27). May had to call the personnel office to get race information as this information is not on the eligibility roster the police department receives. (*Id.* at 111-12). The personnel office verbally provided the race information to May and May noted the race of each individual on the roster and took the roster to Crane. (*Id.*). Crane reviewed the list and made check marks beside each African-American applicant and directed May to process those African-American applicants and get them ready. (May Depo. at 28-29, 112). May responded to Chief Crane that the personnel rules require processing the eligibility roster in the order each applicant is ranked and that he could not remove someone from the list without good reason. (*Id.* at 29). Chief Crane looked at her and said: "You can't do that" Or: I can't do that?" and left her office. Chief Crane removed May from the personnel board shortly after this. (*Id.* at 31). Since being removed from this personnel board position, Chief Crane has also brought May up on disciplinary charges. (*Id.* at 38). She was not subject to disciplinary allegations until after she objected to Chief Crane about his request to identify only the African-American applicants on the roster. (*Id.*). May believes that Tara Bates (White Female) was hired from that list and then Greg Sandridge (African-American male) was hired after several applicants ranked higher than him on the list were skipped. She describes his hire as very unusual. (*Id.* at 76-77).

(Doc. 18 at 12-13 ¶ 33).

Additionally, Chief Crane responded to a question about minority recruitment during his interview for the chief position that he "was kind of surprised that Gadsden is thirty-six percent black and our police department is only nineteen percent. That

7

would be one of the things that I would work on." (Doc. 22 at 3 at 142-43). In this court's view, evidence that Chief Crane had, during his own job interview, publicly made the commitment to hire more black police officers constitutes compelling circumstantial proof to disbelieve the subjective reasons that Chief Crane indicated were behind his decision not to hire Mr. Frazier and to believe, instead, that considerations of race improperly infused the decisionmaking process. *Cf. Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1292 (11th Cir. 1998) ("Because Ross's case turned on circumstantial evidence, the proper inquiry is whether Sweeney's 'Tarzan' remark and Kirkland's remark, when read in conjunction with the entire record, are circumstantial evidence of those decisionmakers' discriminatory attitude."); *id.* ("If so, the court must then determine whether such circumstantial evidence, along with other evidence (including Ross's *prima facie* case), might lead a reasonable jury to disbelieve Rhodes's proffered reason for firing Ross.").

Indeed, the Eleventh Circuit has made it clear that when evidence of a discriminatory attitude falls short of meeting the more stringent standard applicable to establishing direct evidence cases,[5] a plaintiff is still, nevertheless, permitted to rely on the proof to circumstantially show evidence of discrimination. *See Vessels*,

---

[5] Because the court is denying summary judgment under the *McDonnell Douglas* model, it elects not to reach the issue of whether Mr. Frazier has established a direct evidence case of race discrimination.

408 F.3d at 771 ("Vessels' evidence of pretext includes statements he claims that AISS officials made regarding the desirability of having black employees in a school system serving a predominantly black population."); *id.* ("Even where such evidence of race bias proves insufficient to prove an employee's case through direct evidence, it can be relevant in the circumstantial framework to show that the employer's proffered reasons were pretextual." (citing *Ross*, 146 F.3d at 1291)); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981) ("She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (emphasis added) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05, 93 S. Ct. 1817, 1825-26, 36 L. Ed. 2d 668 (1973))).

In sum, as it pertains to pretext inquiry, "[t]he evidence presented by plaintiff[] is sufficient to allow a jury in the exercise of impartial judgment to conclude that [the City's] proffered explanations are unworthy of belief." *MacPherson*, 922 F.2d at 776; *cf. Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker.'" (footnote omitted) (quoting

*Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011))). Alternatively, a reasonable jury could equally conclude that the City's articulated reasons for deciding to hire several non-white applicants over Mr. Frazier are legitimate and not a pretext for discrimination under Title VII or § 1981.

Therefore, because material factual disputes preclude the entry of summary judgment, the City's Rule 56 Motion is **DENIED**.

### City's Strike Motion

The City's Strike Motion is a two-page bare-bones document, which seeks to strike "facts or assertions as constituting inadmissible evidence, and to not consider them for summary judgment purposes." (Doc. 23 at 1). The Strike Motion lacks <u>any</u> citation to legal authorities. The fact that the City refers this court to its reply brief for more specifics is of no consequence, as the reply brief not only is confusingly drafted, but also it similarly lacks any case citations or developed arguments to support the evidentiary relief which the City seeks to obtain from the court.

Accordingly, the City's Strike Motion is **DENIED** as underdeveloped and perfunctorily made. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument

made without citation to authority is insufficient to raise an issue before the court).

Alternatively, the City's Strike Motion is **TERMED** as **MOOT**. More specifically, the overall strength of Mr. Frazier's case means that the denial of the City's Rule 56 Motion is appropriate even without consideration of the facts and assertions challenged in the Strike Motion, including specifically those portions of paragraph 33 of Mr. Frazier's opposition (cited to by the court above), which the City claims contain inadmissible statements.

An order setting this case for a final pretrial conference will follow.

**DONE** and **ORDERED** this the 2nd day of October, 2014.

/s/ VEHopkins
**VIRGINIA EMERSON HOPKINS**
United States District Judge