FILED
2016 May-13  PM 01:16
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **MICHAEL D. FRAZIER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:13-CV-757-VEH** |
| | ) |
| **CITY OF GADSDEN,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION AND ORDER

### I.    Introduction and Procedural History

The trial of this employment lawsuit arising under Title VII began on August 24, 2015, and the jury returned a verdict in favor of Plaintiff Michael D. Frazier ("Mr. Frazier") on August 28, 2015. (Doc. 66); (*see also* Docs. 81-85 (five volumes of trial transcript proceedings)). The jury awarded Mr. Frazier $20,000 in compensatory damages (Doc. 66-1 at 2 ¶ 3) on his race discrimination claim against Defendant City of Gadsden ("COG"). On August 28, 2015, the court entered a final judgment in Mr. Frazier's favor. (Doc. 67).

Pending before the court and briefed by the parties are the following seven post-judgment motions:

- COG's Renewed Motion for Judgment as a Matter of Law, Or

Alternatively Motion for New Trial, Or Alternatively Motion To Alter, Amend, Or Vacate (Doc. 88) (the "Post-Judgment Motion") filed on September 25, 2016;

- COG's Amended Motion for Leave To File Amended Rule 50 and 59 Motions (Doc. 101) (the "Amended Post-Judgment Motion") filed on October 9, 2015;

- Mr. Frazier's Rule 59(e) Motion for Equitable Relief: Pre-Judgment Interest (Doc. 73) (the "Pre-Judgment Interest Motion") filed on September 3, 2015;

- Mr. Frazier's Motion for Equitable Relief: Instatement Or Front Pay (Doc. 74) (the "Instatement Motion") filed on September 4, 2015;

- Mr. Frazier's Motion To Strike Affidavit of Dr. Michael Morris (Doc. 99) (the "Strike Motion") filed on October 7, 2015;

- Mr. Frazier's Motion for Award of Attorneys' Fees and Request for Briefing Schedule (Doc. 69) (the "Fee Motion") filed on September 2, 2015; and

- Mr. Frazier's Motion for Leave To Supplement Plaintiff's Motion for Attorneys' Fees (Doc. 69) and Evidentiary Submission (Doc. 78) with Interim Attorney Time Records (Doc. 108) (the "Supplemental Fee Motion") filed on October 9, 2015.[1]

After carefully considering all of the parties' contentions,[2] COG's Post-

---

[1]  Mr. Frazier's five motions are sometimes referred to collectively as "Mr. Frazier's Post-Judgment Motions."

[2]  Additional filings related to these motions and fully considered by this court include: Docs. 89, 90, 106 (COG's Post-Judgment Motion); Docs. 109, 121 (COG's Amended Post-Judgment Motion); Docs. 94, 95, 107, 128, 129 (Mr. Frazier's Instatement Motion); Docs. 117, 95-1 (Mr. Frazier's Strike Motion); and Docs. 77, 78, 95-2, 95-3, 96, 105 (Mr. Frazier's Fee Motion). Due to the voluminous nature of parties' post-judgment filings, the court does not attempt to address every

Judgment and Amended Post-Judgment Motions are **DENIED**. Alternatively, COG's Amended Post-Judgment Motion is **TERMED** as **MOOT**. Further, Mr. Frazier's Post-Judgment Motions are **GRANTED IN PART**, **TERMED** as **MOOT IN PART**, and otherwise are **DENIED**. The court first addresses the merits of COG's Post-Judgment Motion and Amended Post-Judgement Motion.

## II.     COG's Post-Judgment Motion and Amended Post-Judgment Motion

### A.     Preliminary Considerations

In its initial Post-Judgment Motion, COG contends that Mr. Frazier's "evidence was insufficient for its [sic] race discrimination claims to go to the jury." (Doc. 90 at 3).[3] COG limits the scope of his relief within its Post-Judgment Motion to obtaining a "judgment as a matter of law." (Doc. 88 at 1 ¶ 2; *see also id.* at 2 ("WHEREFORE, defendant moves for said judgment.")). COG unhelpfully omits under which rule or rules it is seeking post-judgment relief within its Post-Judgment Motion.

The title of COG's brief indicates that it supports COG's "Renewed Motion for Judgment As a Matter of Law, Or Alternatively Motion for New Trial, Or Alternatively Motion To Alter, Amend, Or Vacate." (Doc. 90 at 1). However, despite

---

purported point offered by each side and instead has limited its written analysis to only those issues that have been adequately developed by the parties or, alternatively, that cannot go unaddressed because the parties have omitted key pieces from or otherwise misconstrued or misrepresented the trial record.

   [3]  All page references to Doc. 90 correspond with the court's CM/ECF numbering system.

this multifaceted title, the only standard of review expressly invoked by COG is one for deciding a motion for judgment as a matter of law. (*See* Doc. 90 at 3 ("The standard to be used by the district court in deciding a motion for judgment as a matter of law.")). Immediately after identifying judgment as a matter of law as the applicable standard, COG cites to *Martinez v. City of Opa-Locka*, 971 F.2d 708 (11th Cir. 1992), for the proposition that a <u>motion for judgment n.o.v.</u> "should be granted only if the evidence points so overwhelmingly in favor of one party that no reasonable person could draw a contrary conclusion." 971 F.2d at 711. Further COG's brief, like its Post-Judgment Motion, is devoid of any procedural road map for the court to follow when attempting to address the relief ineffectively sought by COG.

In its Amended Post-Judgment Motion, COG mentions Rule 50 and Rule 59 (Doc. 101 at 1) and specifically requests that this court consider the "inadvertent omission" (Doc. 101 at 2 ¶ 1) of judicial estoppel as a defense to Mr. Frazier's "Motion for Equitable Relief, [and] also [as part of] . . . defendant's motions under Rules 50 and 59." (Doc. 101 at 1; *id.* at 4 ¶¶ 4, 5). Against this ambiguous backdrop, the court endeavors to address COG's Post-Judgment and Amended Post-Judgment Motions.

### B.    COG's Renewed JMOL Under Rule 50

Despite the murkiness of COG's filings in terms of the procedural rules

invoked, the court construes them to, at a minimum, include a post-judgment motion

made pursuant to Rule 50 (the "Renewed JMOL"). Rule 50 provides in pertinent part:

**(a) Judgment as a Matter of Law.**

> **(1) *In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

> > **(A)** resolve the issue against the party; and

> > **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

> **(2) *Motion.*** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment–or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged–the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> **(1)** allow judgment on the verdict, if the jury returned a verdict;

**(2)** order a new trial; or

**(3)** direct the entry of judgment as a matter of law.

FED. R. CIV. P. 50(a)-(b).

Within the Eleventh Circuit, a renewed motion under Rule 50(b) <u>must</u> be based

upon the same grounds as the original motion.

> The fact that Rule 50(b) uses the word "renew[ed]" makes clear
> that a Rule 50(b) motion should be decided in the same way it would
> have been decided prior to the jury's verdict, and that the jury's
> particular findings are not germane to the legal analysis. *See, e.g.,* [*Doe
> v.*] *Celebrity Cruises, Inc.*, 394 F.3d [891,] 903 [(11th Cir. 2004)]("This
> Court repeatedly has made clear that any renewal of a motion for
> judgment as a matter of law under Rule 50(b) must be based upon the
> same grounds as the original request for judgment as a matter of law
> made under Rule 50(a) at the close of the evidence and prior to the case
> being submitted to the jury."); *Caban-Wheeler v. Elsea*, 71 F.3d 837,
> 842 (11th Cir. 1996) (stating that a Rule 50(b) motion "may be used to
> renew consideration of issues initially raised in a pre-verdict motion
> [under Rule 50(a)]," <u>but that the court cannot consider matters not raised
> in the initial motion</u>). The jury's findings should be excluded from the
> decision-making calculus on a Rule 50(b) motion, other than to ask
> whether there was sufficient evidence, as a legal matter, from which a
> reasonable jury could find for the party who prevailed at trial.

*Chaney v. City of Orlando*, 483 F.3d 1221, 1228 (11th Cir. 2007) (emphasis added).

The Eleventh Circuit has described the application of the Rule 50 standard as

follows:

> This Court reviews a Rule 50 motion *de novo*, applying the same
> standard as the district court. *Telecomm. Technical Servs. Inc. v. Rolm
> Co.*, 388 F.3d 820, 830 (11th Cir. 2004). The motion should be denied

only if reasonable and fair-minded persons exercising impartial judgment might reach different conclusions. *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000) (per curiam). We consider the evidence in the light most favorable to the non-moving party, *id.*, but we review all evidence in the record and "draw all reasonable inferences in favor of the nonmoving party [without] mak[ing] credibility determinations or weigh[ing] the evidence," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (internal quotation marks omitted). When reviewing the record, we "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. Therefore, we "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (internal quotation marks omitted). However, "the nonmoving party must provide more than a scintilla of evidence that there is a substantial conflict in evidence to support a jury question." *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 701 (11th Cir. 1998) (internal quotation marks omitted).

*Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202, 1210-11 (11th Cir. 2010).

Before the jury got the case, COG moved for judgment as a matter of law two separate times. (*See* CM/ECF minute entry dated Aug. 27, 2015). During the first instance after Mr. Frazier rested, COG contended that the evidence was insufficient to show that John Crane ("Chief Crane") took into account Mr. Frazier's race when disqualifying him as a candidate to become a police officer. (Doc. 84 at 175-78).[4] COG's counsel primarily attacked the sufficiency of the evidence in terms of Mr.

---

[4] All page references to Doc. 84 correspond with the court's CM/ECF numbering system.

Frazier's reliance upon the testimony of Regina May ("Captain May") and Chief Crane's adverse treatment of Captain May after she cautioned him that he could not show a preference for hiring African-American police officers over white applicants. COG also asserted that Mr. Frazier's evidence on back pay was speculative and inadequate. (Doc. 84 at 178). The court then heard from Mr. Frazier in opposition, including evidence directly attributable to Chief Crane that he was considering race as a factor in the hiring process,[5] and ruled:

> Well, it's my practice which I'm not going to deviate from, to defer ruling on motions for judgment. And as to the motion for directed verdict on back wages, that motion is denied.

(Doc. 84 at 181).

After the close of all the evidence, COG perfunctorily "renew[ed] [its] motion for judgment as a matter of law under Rule 50 and base[d] it on the same grounds alleged earlier and argued before the court earlier . . . ." (Doc. 84 at 184). The court again reserved ruling on the sufficiency of Mr. Frazier's race-related evidence as is

---

[5] For example, Captain May testified that Chief Crane asked her "to identify who was black and who was white" on the roster (Doc. 82 at 120) and then after reviewing that information Chief Crane returned the list to Captain May and told her "to process the people who had checkmarks by their names" and who were all black. (Doc. 82 at 121). Also, Mr. Frazier's Ex. 11–Civil Service Board meeting minutes dated February 2, 2012 (Doc. 72 at 2)–confirms that Chief Crane held a belief that more black officers needed to be on the police force in Gadsden and indicated during his interview that, if selected to be Chief, he would make that happen. (*See, e.g.*, Doc. 84 at 103-04 ("I was kind of surprised that Gadsden is 36 percent black, and our police department is only 19 percent. That would be one of the things that I would work on.")). All page references to Docs. 82 and 84 correspond with the court's CM/ECF numbering system.

its customary practice. *Id.*

Nothing in COG's Renewed JMOL compels the court to reconsider the triable nature of Mr. Frazier's race discrimination claim. Instead, and consistent with the court's reasoning on summary judgment entered on October 2, 2014 (Doc. 24), the court remains persuaded that "there was sufficient evidence, as a legal matter, from which a reasonable jury could find for [Mr. Frazier on his race claim]." *Chaney*, 483 F.3d at 1228.

If, at trial, the court had precluded the jury from hearing a portion of the evidence which it found to be pivotally favorable to Mr. Frazier on summary judgment, then COG's Renewed JMOL might have some merit. However, the jury heard all the evidence that this court considered to be essential when denying summary judgment on Mr. Frazier's race discrimination claim. Consequently, the court sees no plausible basis for the type of relief sought by COG in its Renewed JMOL, especially when the Rule 56 and JMOL claim sufficiency standards are essentially the same and, as it pertains to Mr. Frazier's race claim, COG has not pointed to anything that is meaningfully different between the Rule 56 versus the Rule 50 record that calls the court's summary judgment analysis into question. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000) ("[T]he standard for granting summary judgment

'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 251, 106 S. Ct. 2505, 2511, 2512, 91 L. Ed. 2d 202 (1986))); *see also Anderson*, 477 U.S. at 251-52, 106 S. Ct. at 2512 (characterizing triable test under both Rules as "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

Indeed, as the Eleventh Circuit has instructed lower courts, "once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's *prima facie* case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (emphasis added).

Finally, to the extent that COG has attempted to insert new grounds for dismissal into its Renewed JMOL, not previously asserted or otherwise developed pre-verdict as part of the Rule 50(a) record, such as the purported application of

10

judicial estoppel,[6] those arguments are beyond the procedural reach of Rule 50(b).

*Chaney*, 483 F.3d at 1228. Accordingly, for all these reasons, COG's Renewed JMOL

(brought as part of its Post-Judgment and Amended Post-Judgment Motions) is

**DENIED**.

### C.    COG's Passing Reference to Rule 59

COG has not identified under which Rule 59 subpart or subparts it seeks relief.

While the title of its brief superficially signals that COG wants a new trial, neither the

Post-Judgment Motion nor the Amended Post-Judgment Motion specifically contains

that request. Instead, both Motions call for the court to disregard the jury's verdict

and enter judgment in COG's favor.

This court is under no independent obligation to examine COG's post-

judgment positions and figure out for it which portion(s) of Rule 59 might arguably

apply. *See Arundar v. DeKalb Cty. Sch. Dist.*, 620 F.2d 493, 495 (5th Cir. 1980)

("[O]ur courts are too burdened to require the courts to do the work of counsel for the

---

[6] Judicial estoppel is an affirmative defense that neither appears in COG's answer (Doc. 8) nor in its description of defenses listed in the pretrial order. (Doc. 26 at 5-7). Further, COG has neither sought leave to amend the scheduling order nor otherwise demonstrated how an "inadvertent omission" (Doc. 101 at 2 ¶ 1) on counsel's part, constitutes good cause for permitting such a lately asserted defense. *Cf. Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (holding that a party seeking to amend a pleading after the expiration of a scheduling order deadline "must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)").

parties . . . .").[7]

As the United States District Court for the Southern District of Alabama has

observed:

> "Judges are not like pigs, hunting for truffles buried in briefs." *Smith v. Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009). An issue must be "fairly presented" in order to trigger consideration, and a glancing reference without discussion or legal authority does not meet that standard. *Id.* As the Court has previously noted, (Doc. 110 at 2), "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

*Amazing Grace Bed & Breakfast v. Blackmun*, No. 09-0298-WS-N, 2011 WL 606126,

at *3 (S.D. Ala. Feb. 11, 2011). Therefore, akin to *Amazing Grace*, because COG has

not "fairly presented" a legal platform for analyzing the appropriateness of granting

any relief pursuant to Rule 59, a review of its Post-Judgment Motion and Amended

Post-Judgment Motion for this purpose has not even been triggered and is **DENIED**.

Furthermore, to the extent that COG mistakenly thinks it has asked this court

to grant it a new trial under Rule 59(a), none of its contentions rises to the level in

which the court would be inclined to award that relief. Following a jury trial, the

district court "may, on motion, grant a new trial on all or some of the issues–and to

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

any party– . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" FED. R. CIV. P. 59(a)(1)(A). Such grounds include "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving," as well as "substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S. Ct. 189, 194, 85 L. Ed. 147 (1940); *see also Weisgram v. Marley Co.*, 528 U.S. 440, 452 n.9, 120 S. Ct. 1011, 1020 n.9, 145 L. Ed. 2d 958 (2000) (quoting *Duncan* with respect to grounds generally supporting relief in the form of a new trial).

"A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence.'" *Lipphardt*, 267 F.3d at 1186 (quoting *Hewitt*, 732 F.2d at 1556).

Concerning appellate review, "[b]ecause motions for a new trial are committed

to the discretion of the trial court, [the Eleventh Circuit] review[s] the district court's

rejection of the defendants' argument only to ascertain whether there has been a clear

abuse of discretion." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999)

(citing *Agro Air Assocs., Inc. v. Houston Cas. Co.*, 128 F.3d 1452, 1455 n.5 (11th Cir.

1997)).

> The application of <u>an abuse-of-discretion review recognizes the</u>
> <u>range of possible conclusions</u> the trial judge may reach.

> > By definition ... under the abuse of discretion standard of
> > review there will be occasions in which we affirm the
> > district court even though we would have gone the other
> > way had it been our call. That is how an abuse of discretion
> > standard differs from a *de novo* standard of review. As we
> > have stated previously, the abuse of discretion standard
> > allows "a range of choice for the district court, so long as
> > that choice does not constitute a clear error of judgment."

> *Rasbury v. I.R.S.* (*In re Rasbury*), 24 F.3d 159, 168 (11th Cir. 1994)
> (quoting *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989)
> (citing *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)));
> *see also Kern*, 738 F.2d at 971 ("The very concept of discretion
> presupposes a zone of choice within which the trial courts may go either
> way."). Thus, when employing an abuse-of-discretion standard, <u>we must</u>
> <u>affirm unless we find that the district court has made a clear error of</u>
> <u>judgment, or has applied the wrong legal standard.</u> *Maiz*, 253 F.3d at
> 662.

*United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (emphasis added).

Finally, the Eleventh Circuit "ha[s] found that '[t]his level of deference

[afforded to district courts] is especially appropriate where a new trial is denied and

the jury's determinations are left undisturbed.'" *Noga*, 168 F.3d at 1282 (quoting *Insurance Co. of N. Am. v. Valente*, 933 F.2d 921, 925 (11th Cir. 1991)); *see also Valente*, 933 F.2d at 923 ("This standard acknowledges the deference that is due the district court's 'first-hand experience of the witnesses, their demeanor, and [the] context of the trial.'" (quoting *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987))).

Here, COG attempts to establish critical evidentiary deficiencies through Mr. Frazier's lack of qualifications to become a police officer (Doc. 90 at 7-13), his failure to substantiate that a black applicant was hired in lieu of him (*id.* at 13-15), and his failure to show race as a motivating factor in its decision not to hire him.[8] (*Id.* at 15-30). Unhelpfully, the authorities upon which COG relies are, for the most part,

---

[8] COG also confusingly includes a section in its brief (Doc. 90 at 30-36) faulting Mr. Frazier for failing to prove "but for Chief Crane's alleged discriminatory action, that the plaintiff would have been hired by City." (*Id.* at 30 (emphasis added)). A plaintiff in a Title VII race discrimination case is not required to show but-for causation and, the jury was correctly charged using the motivating factor standard without any objection from COG. (Doc. 63 at 6-7). To the extent this argument relates to a mixed-motive defense, this is a burden that belongs to the defendant and, at best, if proven only limits damages that are recoverable in a Title VII discrimination case. *See* 42 U.S.C. § 2000e-5(g)(2)(B) ("On a claim in which an individual proves a violation under section 2000e-2(m) of this title [*i.e.*, a mixed-motives case] and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court– . . . (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).") (emphasis added). Here, the jury concluded that COG had not met its burden on this defense. (*See* Doc. 66 at 2 ¶ 2 (checking "No" as to whether "Mr. Frazier would have been denied employment even if the City of Gadsden had not taken Mr. Frazier's race into account")). The court sees no basis for setting aside this jury determination adverse to COG.

summary judgment decisions rather than on-point opinions grounded in Rule 59(a)'s more exacting against the great weight of evidence measure.

Also, while COG challenges the jury's conclusions, it does so only by completely crediting evidence that is favorable to it while simultaneously fully discounting the weight of positive evidence for Mr. Frazier. For example, as Mr. Frazier points out in his opposition, the jury heard evidence that during the two-year time period in which he should have "remained on the eligible roster several open potions were awarded to [non-white] applicants Montgomery, Sandridge, Mostella and Mark Anthony Clifton." (Doc. 106 at 17-18).[9] Importantly, COG ignores the numerous credibility-driven factual determinations that the jury faced concerning comparator evidence, pretext, and Chief Crane's true motivations and, regardless, has not convinced this court that the jury's findings are against the great weight of the evidence.

Additionally and as it pertains to COG's post-judgment *prima facie* attack premised upon what it perceives to be as problems with Mr. Frazier's ability to satisfy *McDonnell Douglas*'s circumstantial evidence burden-shifting model,[10] COG

---

[9] All page references to Doc. 106 correspond with the court's CM/ECF numbering system.

[10] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 807, 93 S. Ct. 1817, 1824, 1826-27, 36 L. Ed. 2d 668 (1973), *holding clarified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993) (summarizing the *prima facie*, rebuttal (*i.e.*, articulating a legitimate, non-discriminatory reason), and pretext components of a Title VII failure to rehire claim

incorrectly presupposes that a triable case of Title VII race discrimination can <u>only</u> be established this way. This is <u>not</u> the law of the Eleventh Circuit. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."); *cf. also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("*If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.*" (emphasis in original) (citing *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989))).

Instead, a plaintiff can alternatively establish a triable issue of fact through other proof, such as actions and remarks attributable to a decisionmaker, indicating that race impermissibly influenced the hiring process. An abundance of "other proof" exists in this trial record. *Cf. Smith*, 644 F.3d at 1328 ("[T]he plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case."); *id.* ("A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" (footnote omitted) (quoting

---

as well as the respective burdens of the parties).

*Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011))). Thus, COG's undeveloped request for any Rule 59(a) post-judgment relief is also **DENIED** for being substantively unsound.

### D.     COG's Amended Post-Judgment Motion

As pointed out above, COG's Amended Post-Judgment Motion specifically requests that this court consider the "inadvertent omission" (Doc. 101 at 2 ¶ 1) of judicial estoppel as a defense to Mr. Frazier's "Motion for Equitable Relief, [and] also [as part of] . . . defendant's motions under Rules 50 and 59." (Doc. 101 at 1); (*see id.* at 2 ¶ 1 ("Defense counsel apologizes for the inadvertent omission in defendant's prior motion for leave.")); (*id.* at 4 ¶¶ 4, 5). As explained below, this Motion is procedurally flawed and, regardless, is substantively unavailing.

Judicial estoppel is an affirmative defense that appears neither in COG's answer (Doc. 8) nor in its description of defenses listed in the pretrial order. (Doc. 26 at 5-7). Further, COG has neither sought leave to amend the scheduling order nor otherwise demonstrated how an "inadvertent omission" (Doc. 101 at 2 ¶ 1) on counsel's part, constitutes good cause for permitting such a lately asserted defense. *Cf. Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (holding that a party seeking to amend a pleading after the expiration of a scheduling order deadline "must first demonstrate good cause under Rule 16(b) before we will consider whether

amendment is proper under Rule 15(a)"). Accordingly, COG's Amended Post-Judgment Motion is **DENIED** as procedurally flawed.

Moreover, even when considering COG's attempted defense of judicial estoppel, the court is not persuaded to apply the doctrine in the manner requested by COG. The gist of what COG states in its Amended Post-Judgment Motion is that Mr. Frazier's undisputed testimony from his car wreck case should preclude him from taking an inconsistent position in this lawsuit–that he was qualified for the police officer position. (Doc. 101 at 5 ¶ 5). As substantive case authority, COG relies upon the Third Circuit's non-binding decision in *McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir. 1996), *abrogated as recognized by Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 n.4 (3d Cir. 2001) (explaining that necessary inquiry under judicial estoppel (that *McNemar* omits) is "no lesser sanction would adequately remedy the damage done by the litigant's misconduct"):

> Under the particular facts presented here we must decide whether the teachings of *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996), may be applied in this case to invoke the doctrine of judicial estoppel. Specifically, we must decide whether Appellant is judicially estopped from contending that he is a " 'qualified person with a disability' ... who, with or without reasonable accommodation, can perform the essential functions" of a job as contemplated by the Americans With Disabilities Act, 42 U.S.C. §§ 12111(8), 12112(a), in light of his representations to federal and state government agencies that he is totally disabled and unable to work.

*McNemar*, 91 F.3d at 612-13.

Overlooking COG's failure to specifically identify those portions of the trial transcript that show these "two starkly different positions" (Doc. 101 at 5 ¶ 5), COG invites this court to embrace a non-binding extension of the judicial estoppel doctrine recognized by the Third Circuit in an ADA decision involving a plaintiff's prior inconsistent position taken before a state and federal agency without any analysis as to why the Eleventh Circuit would or should adopt it here. Under such circumstances, COG's request for relief, *i.e.*, apply the judicial estoppel doctrine to preclude Mr. Frazier from taking the position he was qualified to be a police officer in this lawsuit because of prior testimony he gave in a personal injury case is underdeveloped and unpersuasive. Accordingly, COG's Amended Post-Judgment Motion is alternatively **TERMED** as **MOOT**.

Thus, for all these reasons, COG's Post-Judgment and Amended Post-Judgment Motions are **DENIED**. Alternatively, COG's Amended Post-Judgment Motion is **TERMED** as **MOOT**.

## III.   Mr. Frazier's Pre-Judgment Interest Motion

Mr. Frazier's Pre-Judgment Interest Motion seeks to amend the court's judgment to include an award of interest on Mr. Frazier's back pay. As legal support for this modification, Mr. Frazier cites to *Tucker v. Hous. Auth. of Birmingham Dist.*,

20

507 F. Supp. 2d 1240, 1283 (N.D. Ala. 2006), *aff'd*, 229 F. App'x 820 (11th Cir. 2007) ("Although the prevailing view is that the decision to award prejudgment interest on back pay is discretionary, <u>many courts apply a presumption of entitlement to prejudgment interest on an award of back pay to a successful Title VII plaintiff</u>.") (citations omitted) (emphasis added); *cf. Gloria v. Valley Grain Products, Inc.*, 72 F.3d 497, 500 (5th Cir. 1996) ("[I]t is settled that the decision to award prejudgment interest on a backpay award in Title VII cases rests within the sound discretion of the district court.").

The Eleventh Circuit has not yet decided whether a district court has the discretion to make such an award. *See EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987) ("In *Smith*, 796 F.2d at 1432-33, this court reserved ruling on whether the decision to award prejudgment interest in a Title VII back pay case lies within the discretion of the district court.").[11] Despite this reserved ruling, the Eleventh Circuit has instructed district courts to use the IRS prime rates to calculate pre-judgment interest. *See Guardian Pools*, 828 F.2d at 1512 (rejecting district court's use of traditional flat interest rate and holding that IRS prime rate is the appropriate measure).

---

[11] In *Guardian Pools*, "the district court adopted the magistrate's recommendation to award prejudgment and post-judgment interest" and the Eleventh Circuit only had to address "whether the district court followed the law in determining the proper interest rates." 828 F.2d at 1512.

In the absence of any opposition by COG and persuasively guided by *Tucker* and *Gloria*, Mr. Frazier's Pre-Judgment Interest Motion is, in the court's exercise of its discretion, **GRANTED** with leave to propose a specific calculation of that award as part of a proposed amended final judgment order to be submitted to chambers email within 10 days from the entry date of this order.

## IV.   Mr. Frazier's Instatement Motion

### A.   Preliminary Considerations

"Title VII claimants are also presumptively entitled to reinstatement under the 'make whole' policy." *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir. 1985) (emphasis added) (citations omitted). Initially, Mr. Frazier primarily asked for an order of instatement[12] as part of his post-judgment equitable relief and secondarily sought front pay. (Doc. 74 at 1). However, on April 28, 2016, Mr. Frazier filed a Notice of Material Development (Doc. 128) (the "Notice") which reverses his priorities and requests, instead, that "the [C]ourt award him front pay in lieu of instatement." (Doc. 128 at 2 ¶ 5). Mr. Frazier lists several reasons for changing his mind, including the length of time since the jury's verdict in his favor, Chief Crane's announcement of his resignation (Doc. 128-1), and the unfavorable work environment

---

[12]  Because this is a failure to hire case, "instatement" rather than "reinstatement" is the appropriate term.

that Mr. Frazier would expect to encounter if he were instated as a police officer with COG.

The court treats this Notice as motion to amend Mr. Frazier's Instatement Motion and, it is **GRANTED**. Further, as a result of the Notice and the first part of COG's opposition that resists the remedy of instatement for Mr. Frazier, the parties now are in agreement (for different reasons) that the court should not consider instatement and, Mr. Frazier's claim for instatement is **HEREBY DISMISSED** from this action or, alternatively **TERMED** as **MOOT**. This also means that Mr. Frazier's Strike Motion relating to the affidavit of Dr. Michael Morris (Doc. 95-1) filed in conjunction with COG's challenge of Mr. Frazier's right to instatement relief is **TERMED** as **MOOT**.

Accordingly, the court will limit its analysis of Mr. Frazier's Instatement Motion to deciding how much he should be awarded in front pay as that is the only genuinely contested issue that remains before the court. *See Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 ("In addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay." (citing *Nord*, 758 F.2d at 1473), *superseded by statute on other grounds as stated in Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340 (11th Cir. 2000)).

Before turning to that issue, the court must address COG's half-hearted attempt

at convincing this court that <u>no</u> front pay should be awarded to Mr. Frazier (in addition to no instatement, the equitable relief dismissed and/or rendered moot by Mr. Frazier's Notice). COG fully acknowledges Title VII's presumption that a successful plaintiff should be awarded either a job <u>or</u> front pay (Doc. 94 at 3).[13] Nonetheless, COG relies on the <u>age</u> discrimination case of *Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277(11th Cir. 1992) and other non-binding ADEA decisions, to show that it would be an abuse of discretion to allow Mr. Frazier a front pay recovery because this is not an "egregious" case. The court is not inclined to follow COG's interpretation of *Lewis* and apply it to this Title VII case for several different reasons.

In *Lewis*, the plaintiff received an offer of reinstatement (which normally cuts off back pay and front pay) and the issue facing the court was whether the plaintiff's rejection of that offer was reasonable such that front pay should still be equitably available to him. *Id.* at 1279. Further, the *Lewis* court ultimately <u>reversed</u> the district court for precluding the plaintiff from recovering any front pay. 953 F.2d at 1282. In doing so, the *Lewis* court cautioned that "[f]ront pay remains a special remedy, warranted only by egregious circumstances." 953 F.2d at 1281. To the extent this warning in *Lewis* can even be viewed as a holding versus merely persuasive dicta, this court views its application as limited to those situations in which a plaintiff has

---

[13] All page references to Doc. 94 correspond with the court's CM/ECF numbering system.

rejected an employer's offer to reinstate or instate, a crucial fact which is missing

from this record.

Additionally, as this court has previously explained in another Title VII post-

judgment equitable relief decision:

> The court has studied and rejects Defendant's argument that the line of controlling ADEA cases which apply an "egregious circumstances" standard to the front pay determination under that particular statute should apply equally to Title VII claims. (Doc. 56 at 3-5 (citations omitted)). Indeed, the ADEA and Title VII are not mirror images of each other. *See, e.g., Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2348 (2009) ("Because Title VII is <u>materially different</u> with respect to the relevant burden of persuasion, however, these decisions do not control our construction of the ADEA.") (emphasis added). Further, in the absence of an Eleventh Circuit or Supreme Court decision expressly embracing an egregious conduct component to a Title VII front pay decision, this court declines to follow those district courts that have disallowed front pay in a Title VII case on the basis that no record of egregious actions on the part of an employer existed. *Accord Tucker*, 507 F. Supp. 2d at 1282-83 ("Given that this is a Title VII case, the court will apply the controlling precedent of the Eleventh Circuit in Title VII cases and will presume that <u>Plaintiff is 'presumptively entitled' to front pay without a required showing of 'egregious circumstances.'</u>") (emphasis added).

*Stinson v. City of Centre*, No. 4:08-CV-00955-VEH, (Doc. 58 at 12 n.5) (N.D. Ala.

Apr. 7, 2010).[14]

In any event, the bulk of COG's opposition relating to front pay focuses upon

---

[14] The court notes that the attorney of record for the defendant in *Stinson v. City of Centre*, H. Edgar Howard, is the same lawyer who primarily represents COG here.

limiting the amount claimed by Mr. Frazier and so that is the disputed issue which

this court will address in length. (*See* Doc. 94 at 24 ("Plaintiff's alternative motion

for front pay should be denied, or <u>alternatively, should be severely limited in</u>

<u>duration</u>.") (emphasis added)).

## B.    Mr. Frazier's Front Pay Award

As the Supreme Court has explained front pay in the context of a Title VII

claim:

> <u>Courts recognized that reinstatement was not always a viable option, and</u>
> <u>that an award of front pay as a substitute for reinstatement in such cases</u>
> <u>was a necessary part of the "make whole" relief mandated by Congress</u>
> <u>and by this Court in *Albemarle*</u>. *See, e.g., Shore v. Federal Express
> Corp.*, 777 F.2d 1155, 1158-1159 (C.A.6 1985) ("Front pay is . . .
> simply compensation for the post-judgment effects of past
> discrimination." It is awarded "to effectuate fully the 'make whole'
> purposes of Title VII"); *Brooks v. Woodline Motor Freight, Inc.*, 852
> F.2d 1061, 1066 (C.A.8 1988) (stating that front pay was appropriate
> given substantial animosity between parties where "the parties'
> relationship was not likely to improve, and the nature of the business
> required a high degree of mutual trust and confidence"); *Fitzgerald v.
> Sirloin Stockade, Inc.*, 624 F.2d, at 957 (upholding award of front pay
> where continuing hostility existed between the parties); *Cassino v.
> Reichhold Chems., Inc.*, 817 F.2d 1338, 1347 (C.A.9 1987) (same). By
> 1991, virtually all of the courts of appeals had recognized that "front
> pay" was a remedy authorized under § 706(g). In fact, no court of
> appeals appears to have ever held to the contrary.

*Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 850-51 (2001) (emphasis

added) (footnotes omitted).

The Eleventh Circuit has similarly summarized this optional equitable remedy:

> As an alternative to reinstatement, the court could have ordered front pay. *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S. Ct. 767, 54 L. Ed. 2d 781 (1978). *See also Thompson v. Sawyer*, 678 F.2d 257, 292 (D.C. Cir. 1982); *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945 (10th Cir. 1980). On remand, the court also should consider this option. In doing so, the court must bear in mind that awards of front pay, like other relief under Title VII, must be fashioned in a manner to "further the goals of ending illegal discrimination and rectifying the harm it causes." *Thompson v. Sawyer*, 678 F.2d at 292.

*Nord*, 758 F.2d at 1473-74 (emphasis added) (footnotes omitted). Further, "[b]ack pay and front pay are not independent and severable items of damages. They are each part of the remedy the court is charged with fashioning, a remedy that, as a whole, achieves the remedial purposes of the Act." *Weaver*, 922 F.2d at 1529 (emphasis added).

Concerning the burden to prove and factors applicable to front pay, this court has previously stated in the Title VII case of *Warren v. Lawrence County Commission*, No. 5:08-CV-223-VEH, (Doc. 232 at 20-21) (N.D. Ala. Dec. 1, 2011) (filed in by Mr. Frazier in this lawsuit as Doc. 74-1):

> "The plaintiff bears the initial burden of providing the district court 'with the essential data necessary to calculate a reasonably certain front pay award,' including 'the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate.'" *Barbour v. Merrill*, 48 F.3d 1270, 1279 (D.C. Cir. 1995) (quoting *McKnight v. General Motors Corp.*, 973 F.2d 1366,

27

1372 (7th Cir. 1992)). Thereafter, "[t]he defendant remains free to challenge the award's amount, length, or interest rate, or to establish as an affirmative defense that the plaintiff failed to mitigate damages." *Id.* at 1279-80.

> In making a front pay determination, the court will examine factors such as the availability of employment opportunities, the period within which one by reasonable efforts may be reemployed, the employee's work and life expectancy, and other facts that are pertinent to prospective damage awards. The court also may consider such factors as whether plaintiff has reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intends to work or is physically capable of working, and whether liquidated damages have been awarded.

Am. Jur. 2d *Job Discrimination* § 2641 (citing *Gargano v. Diocese of Rockville Centre*, 888 F. Supp. 1274 (E.D.N.Y. 1995), *aff'd*, 80 F.3d 87 (2d Cir. 1996); *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132 (7th Cir. 1994)); *see also Davoll v. Webb*, 194 F.3d 1116, 1144 (10th Cir. 1999) ("Numerous factors are relevant in assessing front pay including work life expectancy, salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within which a plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value." (emphasis added)).

(Doc. 74-1 at 20-21).

Mr. Frazier primarily seeks a front pay award of $806,725. (Doc. 74 at 14). Mr. Frazier's front pay figure assumes that he would have been a police officer for at least 25 years and that he would have earned $28,059 (*i.e.*, $13.49 (in rookie pay) times

2,080 (in hours)) in straight time annually[15] and another $4,210 (*i.e.*, $20.24 (overtime rate) times 208 (in hours)) in overtime pay annually.[16] *Id.* This calculation omits any cost of living increases or other adjustments in pay that might occur.[17] (Doc. 74 at 14). The proposed amount also does not factor in any employee allowances or benefits. Finally, the front pay award is not discounted to its present value. (*Id.* at 15); *see also Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 882 (2d Cir. 1997) ("The district court did not factor future salary increases into its front pay award; hence, it was not required to discount to present value.").

COG contends that Mr. Frazier's evidence to support his front pay request "is

––––––––––––––––––

[15] In a footnote, Mr. Frazier mentions that he believes a 1.5% increase in pay took place after he was disqualified to become a police officer. (Doc. 74 at 14 n.4). He further requests that "[i]f such an increase were approved, . . . that this increase by factored in his front pay award." *Id.* No evidence has been introduced for this court to reasonably include this pay increase in fashioning Mr. Frazier's front pay award.

[16] In another footnote, Mr. Frazier asks for the court to approve an additional $4,210 in overtime per year based upon the testimony of Mitch James and Regina May indicating that officers generally have opportunities to work significant overtime beyond the customary 208 hours per year. (Doc. 74 at 14 n.6). Factoring in this additional compensation, Mr. Frazier's total front pay award would equal $910,275. However, the court will not add in this component because guessing on an amount of additional overtime offered to and accepted by Mr. Frazier on an annual basis is highly speculative, especially with Mr. Frazier's taking the position that he intended to "continue his current position at the car dealership." (Doc. 74 at 11). Maintaining his other job at Ronnie Watkins Ford would greatly diminish the number of hours Mr. Frazier would have to do extra overtime.

[17] In his reply brief, Mr. Frazier cites to the private sector case of *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1364 (11th Cir. 1994), and asks the court to include a cost of living increase of 3%. (Doc. 107 at 9). If Mr. Frazier wanted this component to be a part of his front pay award, then he should have included it as part of his initial brief so that COG would have the opportunity to substantively respond. In any event, the court will not make an adjustment in favor of Mr. Frazier on such a one-sided record.

entirely too speculative to give the court a basis for an appropriate award, if any."
(Doc. 94 at 20). More specifically, COG indicates that "[w]hile plaintiff's calculations
of straight time net pay appear to be appropriate, the remainder of plaintiff's bases for
calculations [is] unsupported with credible evidence." *Id.* COG urges that the court
use $7,000 as an appropriate yearly value for Mr. Frazier's front pay award based on
the jury's back pay award of $20,000 for an approximate three-year period that
apparently factored in Mr. Frazier's mitigation efforts. (Doc. 94 at 22). Finally, COG
complains that using testimony of three officers "as support for the proposition that
plaintiff ought to be given an award for 25 years future service . . . . [] is speculation."
(Doc. 94 at 23).

Having considered both sides' arguments, the court accepts Mr. Frazier's
annual calculations for straight pay and customary overtime. In particular, the court
finds these calculations to be substantially supported by evidence adduced at trial and
otherwise reasonable. Further, COG has not objected to Mr. Frazier's annual straight
pay computation.

However, the court concludes that a duration of 25 years is no longer
sustainable on this record. As explained below, the court finds that the cutoff date for
Mr. Frazier's front pay award should not be 25 years, but rather April 28, 2016–the
date on which he filed his Notice. As this Notice states:

> Given the passage of time since the disqualification of Plaintiff, coupled with <u>Plaintiff's belief that there are high ranking individuals within the Gadsden Police Department and Personnel Office that would be adverse to Plaintiff's instatement, Plaintiff believes an order of instatement would prove futile in the long term</u>. Thus, Counsel for Plaintiff respectfully requests the Court award front pay in lieu of instatement.

(Doc. 128 at 2 ¶ 5 (emphasis added)). Therefore, Mr. Frazier, has admitted through this Notice that he no longer views employment with COG as a police officer as a desirable long-term option for himself and he seeks an award of front pay only. This admission directly undercuts the credibility of Mr. Frazier's trial testimony about how he "had always wanted to be a police officer with Gadsden Police" (Doc. 81 at 155) and, likewise, guts the foundation for his front pay formula premised upon 25 years of service in that position. (*See also* Doc. 129 at 1 ¶ 2 (COG's Response to Notice stating that Mr. Frazier's "basis for his request simply makes no sense"); *id.* at 2 ¶ 5 ("Now, he brings to the Court the 'material development' of the departure of the one official at Gadsden who would be most *against* his instatement, and gives this as a reason for withdrawing his desire for instatement.") (emphasis in original)). It also causes a major shift in the court's balancing of the equities when structuring appropriate make-whole relief.

The court has not been able to find a case that closely compares with this, apparently, somewhat unique situation. However, in this court's view, a prevailing

plaintiff's decision to voluntarily withdraw a pending claim for instatement post-trial is factually analogous to a plaintiff's rejection of an employer's offer to instate. Further, under either scenario (and assuming the absence of substantial discord, antagonism, or other special circumstances) it would be <u>inequitable</u> under Title VII for back pay or front pay to continue to accrue. *Cf. Lewis*, 953 F.2d at 1279 ("As a general rule, 'a Title VII claimant's rejection of a defendant's job offer normally ends the defendant's ongoing responsibility for back pay . . . .'" (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 241, 102 S. Ct. 3057, 3070, 73 L. Ed. 2d 721 (1982))); *see also Ford*, 458 U.S. at 241, 102 S. Ct. at 3070 ("[W]e hold that, absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability.").

Further, common sense dictates that Title VII's make-whole remedy will not be served by awarding front pay beyond the date on which Mr. Frazier withdrew his presumptive right to instatement, the preferred remedy under Title VII. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 850, 121 S. Ct. 1946, 1950, 150 L. Ed. 2d 62 (2001) ("Courts recognized that reinstatement was not always a viable option, and that an award of front pay as a <u>substitute</u> for reinstatement in such cases was a necessary part of the 'make whole' relief mandated by Congress and by this Court in *Albemarle*.") (emphasis added). Importantly, merely <u>believing</u> that persons

with COG would be adverse to Mr. Frazier's instatement does not make that remedy legally infeasible or transform this case into one involving special circumstances warranting front pay. *Cf. Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1339 (11th Cir. 1999) ("[W]e emphasize that the presence of some hostility between parties, which is attendant to many lawsuits, should not normally preclude a plaintiff from receiving reinstatement.").

Instatement and front pay are not interchangeable awards under Title VII. Instead, front pay is a backup remedy to invoke sparingly when instatement is not otherwise available. The Eleventh Circuit requires this court to "'carefully articulate' its reasons for awarding front pay in lieu of reinstatement." *Farley*, 197 F.3d at 1339. Here, the court cannot envision an abuse of discretion-proof explanation for awarding Mr. Frazier the sizeable amount of front pay that he has requested for a period of 25 years as he no longer seeks instatement. Instead, the court will exercise its discretion to avoid awarding Mr. Frazier a monetary windfall and only allow him to recover front pay through April 28, 2016–the day on which he disavowed instatement on the record.

Accordingly, Mr. Frazier's Instatement Motion is **GRANTED IN PART** and otherwise is **DENIED**. Further, Mr. Frazier is **HEREBY DIRECTED** to confer with COG as to the appropriate total of this revised front pay amount through April 28,

2016, and notify this court of that figure as part of his proposed amended final judgment order to be submitted to chambers email within 10 days from the entry date of this order.

## V.   Mr. Frazier's Fee and Supplemental Fee Motions

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).[18] Mr. Frazier bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. Concerning the reasonableness of a lawyer's hourly rate, the Eleventh Circuit has explained:

---

[18]   In *Norman*, the Eleventh Circuit acknowledged the evolving views about the continued usefulness of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) to the attorney fee inquiry, in light of the series of Supreme Court decisions that culminated in the understanding that, with very limited exceptions, "the lodestar as calculated in *Hensley* presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2–106 (1980) and adopted in *Johnson* . . . ." *Norman*, 836 F.2d at 1299; *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9, 103 S. Ct. 1933, 1940 n.9, 76 L. Ed. 2d 40 (1983) ("[M]any of the[ *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."). Nonetheless, the Eleventh Circuit "still believe[s] that at least some of the *Johnson* factors have utility in establishing the hourly rate. *Id.* The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Blum v. Stenson*, 465 U.S. at 895-96 n.11, 104 S. Ct. at 1547 n.11. *Accord, Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *NAACP v. City of Evergreen*, 812 F.2d at 1338. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. *Blum*, 465 U.S. at 896 n.11, 104 S. Ct. at 1547 n.11. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. *See Hensley*, 461 U.S. at 439 n.15, 103 S. Ct. at 1943 n.15. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

*Norman*, 836 F.2d at 1299 (emphasis added).

As set forth in Mr. Frazier's initial Fee Motion, he is seeking $173,403.00 in attorneys' fees. (Doc. 78-1 at 10 ¶ 13).[19] Mr. Frazier's Supplemental Fee Motion seeks an additional fee award for 90.5 hours expended by his lead counsel, Brett Adair ("Mr. Adair"), since filing the original application on September 9, 2015. (Doc. 108 at 1-2). The hourly rates proposed by Mr. Frazier for approval are: $425 for Mr. Adair; $200 for the associate, Matthew Hill ("Mr. Hill"); and $90 for the legal

---

[19] All page references to Doc. 78-1 correspond with the court's CM/ECF numbering system.

assistant, Michelle Mathews ("Ms. Mathews"). (Doc. 78-1 at 10).

On October 2, 2015, COG responded to Mr. Frazier's Fee Motion. (Doc. 96). COG does not dispute Mr. Frazier's status as a prevailing party under Title VII–a threshold inquiry under 42 U.S.C. § 2000e-5(k). *See id.* ("In any action or proceeding under this subchapter, the court, in its discretion, may allow the <u>prevailing party</u>, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.") (emphasis added). Instead, COG acknowledges "that the cases support an award for attorney fees and costs in this matter." (*Id.* at 1). COG also "does not contest the reasonableness of the time and expense entries as shown in the plaintiff's evidentiary submission."[20] (Doc. 96 at 5).

COG does disagree with Mr. Frazier over the reasonableness of the hourly rates he has proposed. Although COG does not ever explicitly indicate which hourly rate or rates it claims to be unreasonable, based upon its response including the opposing

---

[20] Mr. Frazier has not included a calculation of his expenses as part of his sealed time records or other evidentiary submissions. (Docs. 78-1 to 78-7, 108-2). Mr. Frazier also does not anywhere mention an expense total for which he seeks reimbursement as part of his Fee or Supplemental Fee Motions. (Docs. 69, 108). Instead, on October 14, 2015, Mr. Frazier filed a "REVISED BILL OF COSTS" in the total amount of $4,353.18. (Doc. 116 at 1). COG has not objected to this accounting of costs. In the absence of an objection, it is the practice of this court for the clerk of the court to tax costs filed pursuant to 28 U.S.C. § 1920. Consequently, this court will not undergo an analysis of the expenses listed in Doc. 116 and the clerk should instead evaluate their appropriateness under § 1920 upon the entry of this memorandum opinion and order.

attorney affidavits, COG implicitly takes the most issue with Mr. Adair's proposed rate of $425. COG also argues that Mr. Frazier is not entitled to any lodestar enhancement. (Doc. 96 at 5-7). Finally, COG asks the court to "incorporate [its] evidence into a calculation of a reasonable hourly rate, and multiply that by plaintiff's total of hours expended, and . . . award a fair amount for attorney fees and costs." (Doc. 96 at 8).

In accordance with the attached revisions – and for the following reasons – the court will grant Mr. Frazier $160,390 in attorneys' fees.

## Reasonableness of Hours Expended

As a general matter, courts in the Eleventh Circuit determine the reasonable hours expended by performing "a task-by-task examination of the hours billed." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999) (citing *Loranger v. Stierheim*, 10 F.3d 776, 782-83 (11th Cir. 1994)). The court did so in this case. In total, Mr. Frazier's counsel seek to recover for approximately 517.40 hours of work expended in litigating the case. (Doc. 78-1 at 10 ¶ 13); (Doc. 108 at 2).[21] As noted above, Mr. Frazier has the burden of establishing the reasonableness of the hours spent on his case. *Norman*, 836 F.2d at 1303. Indeed, "fee counsel should [maintain]

---

[21]   (394 + 27.2 + 5.7) = 426.9 in hours claimed initially + 90.5 in hours claimed supplementally = 517.4 in total number of compensable hours claimed.

Case 4:13-cv-00757-VEH   Document 130   Filed 05/13/16   Page 38 of 51


records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (citing *Hensley*, 461 U.S. at 437 n.12, 103 S. Ct. at 1941 n.12). "[W]here that party presents inadequate documentation the court may determine a reasonable award based on its own experience." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (citing *Mills by Mills v. Freeman*, 118 F.3d 727, 734 (11th Cir. 1997), *superseded on other grounds by Eleventh Circuit appellate rule as stated in Gray ex rel. Alexander v. Bostic*, 507 F.3d 1321, 1327 n.2 (11th Cir. 2009)).

With these principles in mind, the court concludes that Mr. Frazier's counsel reasonably expended a total of 473.8 hours in litigating this case. Put more specifically, the court allots that revised total number of hours to the following respective persons:

| Attorney | Hours |
|---|---|
| Mr. Adair | 446.6[22] |
| Mr. Hill | 27.2[23] |

---

[22] (394 + 90.5) = 484.5 in total claimed hours - (21.4 + 16.5) = 37.9 in unreasonably claimed hours = 446.6 in reasonably claimed hours.

[23]  All 27.2 hours are reasonably claimed.

Paralegal

Ms. Mathews                              00.0[24]

This quantity obviously represents a reduction from the submitted request. After reviewing the documentation provided by counsel, the court found that many of the hours expended were not reasonably included in the total. In some cases as with the time submitted for Ms. Mathews, the court found that the duties performed were clerical in nature and, therefore, not recoverable. *See, e.g., Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) ("The Eleventh Circuit has iterated that the efforts of a paralegal are recoverable 'only to the extent that the paralegal performs work traditionally done by an attorney.'" (citing *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (quoting *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982)))).[25]

In others, the recorded duties were not compensable as they involved tasks falling outside of Mr. Frazier's case in chief, including time spent on equitable relief and fee petition issues. Further, Mr. Frazier's counsel sometimes provided insufficient detail for the court to discern the nature and quality of the hours

---

[24]  All 5.7 in claimed hours are unreasonable.

[25]  In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.

expended. Additionally, the court disallowed an hour of attorney fee time spent returning to Birmingham from Anniston on the final day of trial. In each of these situations, the court discounted the total amount sought by the unreasonably claimed time.

### Reasonableness of Hourly Rates

Mr. Adair's affidavit offered in support of his rate substantiates that he has 20 years experience as a lawyer and that he has been involved in "approximately 300-400 employment discrimination and civil rights matters and claims at various stages" over that period of time. (Doc. 78-1 at 4 ¶ 3). Mr. Adair references a Southern Division employment case (not before the undersigned) in which he was approved at a rate of $350 in 2010. (Doc. 78-1 at 7 ¶ 7); *see also Marks v. U.S. Security Associates, Inc.*, No. 2:08-CV-0459-KOB, (Doc. 326 at 5) (N.D. Ala. Sept. 28, 2010) (approving rate "as reasonable and in accordance with the prevailing market rate in the Northern District of Alabama for similar services by lawyers of reasonably comparable skills, experience, and reputation").[26] Mr. Adair also justifies the hourly rate sought here on account of the complexity of Mr. Frazier's case, including that

---

[26] Of course, this court is not bound by another judge's fee award. Additionally, while *Marks* provides some indication of Mr. Adair's reasonable rate in 2010, other case-specific examples discussed herein involving <u>significantly more experienced counsel</u> than he show why $350 is a reasonable rate for him here.

"this was a rather unusual and difficult claim alleging a white Police Chief discriminated against White applicants." (Doc. 78-1 at 6 ¶ 7).

As further evidentiary support for the reasonableness of Mr. Adair's rate, Mr. Frazier relies upon the affidavits of Kenny Hayes ("Mr. Haynes") (Doc. 78-2), Alicia Haynes ("Ms. Haynes") (Doc. 78-3), Heather Leonard ("Ms. Leonard") (Doc. 78-4), and John Saxon ("Mr. Saxon"). (Doc. 78-5). As their affidavits reflect, all these attorneys have sufficient experience in the area of employment law to provide opinions about prevailing market rates.

Mr. Haynes has been licensed to practice in the State of Alabama since 1991 (Doc. 78-2 at 2 ¶ 1)[27] and has approximately four more years of experience than Mr. Adair. Mr. Haynes states that "the prevailing market rate in the Northern District of Alabama for plaintiff employment attorneys ranges from $250 to $600 per hour." (Doc. 78-2 at 4 ¶ 5). Mr. Haynes further indicates that an appropriate hourly range for someone with the experience level of Mr. Adair "would be $400-475 per hour." (Doc. 78-2 at 5 ¶ 11). Mr. Haynes references the same 2010 rate applied in the Southern Division employment case involving Mr. Adair as support for Mr. Adair's claimed rate in this case. (*Id.* ¶ 12).

Ms. Haynes has been licensed to practice law in Alabama for nearly 30 years

---

[27] All page references to Doc. 78-2 correspond with the court's CM/ECF numbering system.

(Doc. 78-3 at 2 ¶ 1),[28] which surpasses Mr. Adair's level of experience by about a decade. Ms. Haynes indicates that "[t]he prevailing market rate in Alabama currently for plaintiff's attorneys in employment cases, such as the current case, range[s] from $375 to $650 per hour depending upon the skill of the litigator." (Doc. 78-3 at 4 ¶ 5). Ms. Haynes further states that all three rates sought by Mr. Frazier are reasonable based upon her personal experiences and overall familiarity with the "prevailing hourly rate of attorneys in Birmingham, Alabama." (Doc. 78-3 at 5 ¶ 6; *id.* at 10 ¶ 17; *id.* at 10 ¶ 18). Ms. Haynes also points to several cases in her affidavit to support her range estimates,[29] including the hourly rate of $375 awarded to her in March of 2013 in the case of *Hithon v. Tyson Foods, Inc.*, 4:96-CV-03257-JHE, (Doc. 478 at 45) (N.D. Ala. Mar. 19, 2013). *Hithon* involved a race discrimination claim for failure to promote and, in terms of the type of claim successfully tried to a jury, is very close to this case.

Ms. Leonard, a 1998 Alabama Bar admittee (Doc. 78-4 at 3 ¶ 1),[30] offers the same opinion as Mr. Haynes in terms of the prevailing market rate applicable to cases arising in the Northern District of Alabama. (*Id.* ¶ 3). Ms. Leonard also opines that

---

[28] All page references to Doc. 78-3 correspond with the court's CM/ECF numbering system.

[29] The court does not discuss every case cited by Ms. Haynes in her affidavit, but has considered each one.

[30] All page references to Doc. 78-4 correspond with the court's CM/ECF numbering system.

the "fee petition represents a reasonable number of hours." (Doc. 78-4 at 6 ¶ 12). Ms. Leonard shares no illustrative cases to support her opinions. Ms. Leonard provides a similar affidavit about reasonable attorney hours spent post-trial in support of Mr. Frazier's Supplemental Fee Motion. (Doc. 108-3).

Finally, Mr. Saxon states that "[t]he prevailing market rate in Birmingham for plaintiffs' attorneys in cases such as the *Frazier* case, involving race discrimination, ranges from $250.00 to $650.00 per hour." (Doc. 78-5 at 5 ¶ 11).[31] After offering this opinion, Mr. Saxon confirms the reasonableness of all three specific rates requested in this case, but he does not cite to any examples of underlying awards to support this statement. (Doc. 78-5 at 6 ¶ 13).

In 2014, Mr. Saxon requested that this court approve a $450 hourly rate for his legal services and the undersigned, instead, awarded him at his normally hourly rate of $385 in the Title VII pregnancy discrimination and retaliation lawsuit of *Maner v. Linkan, LLC*, No. 4:12-CV-1088-VEH, (Doc. 50 at 11, 13) (N.D. Ala. June 13, 2014). The Eleventh Circuit affirmed, stating *inter alia*, "the district court did not clearly err in setting lead counsel's rate at his normal billing rate of $385 and in the middle of the expert's range." *Maner v. Linkan, LLC*, 602 F. App'x 489, 494 (11th Cir. 2015). Mr. Saxon has been practicing law in Alabama since 1977, which is significantly

---

[31] All page references to Doc. 78-5 correspond with the court's CM/ECF numbering system.

43

longer than Mr. Adair who was licensed in October of 1995.

In challenging Mr. Adair's hourly rate of $425, COG relies upon the affidavits of F. Michael Haney ("Mr. Haney") (Doc. 95-3 at 2-3 ¶ 1) and James E. Turnbach ("Mr. Turnbach"). (Doc. 95-2); (*see also* Doc. 96 at 2-3 (summarizing hourly rate information provided by affiants)). Mr. Haney has been licensed as an attorney in Alabama since 1975 and currently practices in Gadsden, Etowah County, Alabama. (Doc. 95-3 at 1). He has familiarity with hourly rates in Etowah and surrounding counties due to his practice of law, his service as a Commissioner of the Alabama State Bar, and his service as a mediator in both federal and state lawsuits. (*Id.* at 2). Without citing to any specific cases to substantiate his range estimates, Mr. Haney opines that the hourly range for lawyers who regularly deal with cases arising in the Middle Division for the Northern District of Alabama "extends from about $150 per hour on the low end of the range to about $225 per hour at the high end of the range." (Doc. 95-3 at 3 ¶ 1).

Mr. Haney also states that he is "familiar with a number of practitioners in the Gadsden, Etowah County area who regularly bring civil actions in most state and federal courts on behalf of plaintiffs and who are capable of and actually do undertake cases in which plaintiffs seek to vindicate various state and federal constitutional and statutory rights." (*Id.* at 3 ¶ 2). Based upon this background and the study of this

44

particular case, Mr. Haney opines that Mr. Frazier's lawsuit "does not appear . . . [to be] so novel or complex as to preclude attorneys from the Etowah County area or of the counties comprising the Middle Division of the Northern District from undertaking representation of the plaintiff." (Doc. 95-3 at 3 ¶ 2).

Mr. Turnbach has been continuously practicing law in Etowah County for 40 years and draws a distinction between fees awarded in Etowah County versus in Birmingham, Huntsville, Montgomery, or Mobile. (Doc. 95-2 at 1). More specifically, Mr. Turnbach indicates that the hourly rate for "comparable work" in those latter jurisdictions "are absolutely foreign to Etowah County, Alabama." *Id.* Mr. Turnbach further opines that a range of "$200.00 per hour to $250.00 per hour . . . would not be normal and would be payable only to attorneys in Etowah County who have vast experience and knowledge about specific areas of the law" and that "the vast majority of instances [in Etowah County involve] . . . the range of $135.00 to $195.00 per hour." *Id.* Concerning an hourly rate over $250.00, Mr. Turnbach additionally states that such instances "would be rare and would be . . . well outside the normal range of attorney fees payable in Etowah County, Alabama." *Id.* Mr. Turnbach, like Mr. Haney, offers no specific examples of awards that support his range estimates.[32]

---

[32] Based upon the Eleventh Circuit's decision in *Norman*, both affidavits offered by COG have little or no value due to their inadequacy under the lodestar approach:

The thrust of COG's contention is that even though Mr. Frazier retained a Birmingham attorney to represent him, using Birmingham or Southern Division rates is, nevertheless, unreasonable and the prevailing market rate should be tied to the substantially lower Etowah County and Middle Division rates. Thus, both sides geographically define the applicable legal market differently. In his reply (Doc. 105 at 4), Mr. Frazier cites to *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489 (11th Cir. 1994) and other cases, and offers evidence why Birmingham rates should apply to this Middle Division case. (Docs. 105-2, 105-3, 105-4).

In *Cullens*, the Eleventh Circuit rejected the plaintiffs' argument that the hourly rate should be tied to the market where the lawyers primarily practiced rather than the place where the case was filed. As the *Cullens* court explained:

---

The affidavits of Siegel and McPhillips both show that prevailing market rates are not necessarily as high as the $125 per hour figure requested. The affidavit of Ms. Boyd is based on court awards and negotiated settlements in other cases. Under *Johnson* such information would be relevant but under the lodestar approach it is not. For example, there is no assurance that the attorneys in those cases possessed similar skill, experience or reputation or that the case or clients were similar to the one at bar. Further, to the extent that fee applicants rely on an award made in the Northern District of Alabama, there is no evidence that the prevailing market rates in that area are the same as in Montgomery.

The affidavits offered in opposition are also deficient. Messrs. Garrett and Novak do not attest that they have charged $65 or $70 an hour in civil rights cases. Further, their affidavits do not show that the rates to which they attest were charged in similar cases for similar clients by lawyers of similar skill, experience and reputation.

*Norman*, 836 F.2d at 1304-05 (emphasis added).

46

> [Plaintiffs] contend the district court erred in using Macon, Georgia as
> the relevant market for the hourly rate to be used in the computation of
> the lodestar figure. <u>The rate of attorney's fees is that of the place where
> the case is filed.</u> *See Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983).
> The case, although transferred in 1985 to a judge of the Northern
> District, based in Atlanta, was initially filed in Macon. Plaintiffs assert
> Atlanta was the appropriate market because there were no lawyers in
> Macon with the expertise to handle their case. The district court did not
> err in focusing on whether there were attorneys in Macon with the
> ability to handle plaintiffs' individual claims rather than the proposed
> class action. <u>Nor did it err in finding that plaintiffs did not meet their
> burden of showing a lack of Macon lawyers willing or able to handle
> their individual claims</u>.

*Cullens*, 29 F.3d at1494 (emphasis added). Here, in contrast with the plaintiffs in

*Cullens*, Mr. Frazier <u>has</u> shown a lack of lawyers practicing in Gadsden who were

willing or able to handle his case. More specifically, he has filed his affidavit (Doc.

105-2) and affidavits from two Gadsden attorneys (Docs. 105-3, 105-4)[33]

demonstrating the difficulty he encountered in trying to retain a local attorney to

represent him. (*See, e.g.*, Doc. 105-3 at 2-3 ¶ 4 ("I [Randy Phillips, Jr.] recommended

that Mr. Frazier speak with an employment litigator in the Birmingham area that I

knew had adequate experience . . . . I was not aware of any attorneys in Gadsden with

expertise in employment law who would be willing to sue the City of Gadsden.""));

(Doc. 105-4 at 2-3 ¶ 4 ("I [Jay Stover] made this recommendation [to speak with a

---

[33] All page references to Docs. 105-3, 105-4 correspond with the court's CM/ECF numbering system.

Birmingham attorney] because I do not practice employment law and I was not aware of any attorneys in Gadsden with sufficient expertise in employment law who would be willing to sue the City of Gadsden.")). Thus, consistent with *Cullens* and the evidence provided by Mr. Frazier substantiating why he retained a Birmingham attorney, this court will apply the prevailing market rates applicable to cases filed in Birmingham or the Southern Division of the Northern District of Alabama.

Ultimately, the court has relied on its own expertise in order to reach the appropriate hourly rate for Mr. Adair and his associate, Mr. Hill, a 2011 graduate. However, the court also considered the experience and reputation of the attorneys, as attested to by the affidavits and declarations, the customary fees, the evidence provided by both sides as to the reasonable hourly rate, the degree to which opinions have been substantiated by examples of underlining comparable cases, and the court's own review of previous fee awards. With these considerations in mind, the court finds that $350 is a reasonable hourly rate for Mr. Adair in this employment lawsuit and $150 is for Mr. Hill as they are in accordance with the prevailing Birmingham or Southern Division range of rates for similar services by lawyers of reasonably comparable skills, experience, and reputation.[34] Multiplying the hours reasonably

---

[34]   The court notes that Mr. Adair included in his affidavit that he does defense work in addition to representing plaintiffs. (Doc. 78-1 at 3 ¶ 3). As Mr. Adair did not share with the court the hourly rate that he (or his associate) charges to his defense clients, the court had no choice but to rely

expended by the reasonable hourly rate, the court finds that $156,310 (446.6 total hours X $350) represents the lodestar calculation for Mr. Adair's time and $4,080 (27.2 total hours X $150) for Mr. Hill's time. Further, the total lodestar amount equals $160,390 (*i.e.*, $156,310 + $4,080 = $160,390).

## No Lodestar Adjustment Is Appropriate

"After determining the lodestar amount as above, the court is entitled to adjust the amount of final fees awarded in light of the results obtained through the litigation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (citing *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40; *Norman*, 836 F.2d at 1302). "If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308 (11th Cir. 2008) (quoting *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940). However, "there is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account

---

upon its own judgment and exercise considerable discretion in arriving at the rates of $350 for Mr. Adair and $150 for Mr. Hill. The court did not reach the reasonableness of Ms. Mathews's claimed rate, having struck all her claimed time as not properly awardable.

and proving with specificity that an enhanced fee is justified." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 130 S. Ct. 1662, 1669, 176 L. Ed. 2d 494 (2010).

The Eleventh Circuit provided particularly meaningful guidance on lodestar adjustments in *Norman* when it wrote:

> If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised.

836 F.3d at 1302 (citing *Hensley*, 461 U.S. at 435 n.11, 103 S. Ct. at 1940 n.11). In accordance with the Eleventh Circuit's instructions in *Norman*, the court looks to the scope of the litigation as a whole, focusing on the significance of the overall results achieved in light of the substantial hours expended in pursuing this case. With these considerations in mind, the court finds that neither an enhancement nor a reduction to the lodestar amount is justified in this case.

Thus, Mr. Frazier's Fee and Supplemental Fee Motions are **GRANTED IN PART** and are otherwise **DENIED**. Further, Mr. Frazier is **HEREBY DIRECTED** to submit to chambers email a proposed amended final judgment order that includes a recovery for reasonable attorneys' fees in the amount of $160,390 within 10 days

from the entry date of this order.

## V.    Conclusion

COG's Post-Judgment and Amended Post-Judgment Motions are **DENIED**.

Alternatively, COG's Amended Post-Judgment Motion is **TERMED** as **MOOT**. Mr.

Frazier's Post-Judgment Motions (*i.e.*, his Instatement Motion, his Pre-Judgment

Interest Motion, his Strike Motion, and his Fee and Supplemental Fee Motions) are

**GRANTED IN PART**, **TERMED** as **MOOT IN PART**, and otherwise are

**DENIED**. Additionally, Mr. Frazier's Notice (which the court above treated as a

motion to amend his Instatement Motion) is **GRANTED**, and any claim to

instatement is **HEREBY DISMISSED** or, alternatively, is **HEREBY TERMED** as

**MOOT**.

Further, the clerk is **HEREBY DIRECTED** to place the court-annotated time

records attached to this order under seal. Finally, Mr. Frazier is **HEREBY**

**DIRECTED** to submit to chambers email a proposed amended final judgment order

as described herein no later than 10 days from the entry date of this order.

**DONE** and **ORDERED** this the 13th day of May, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge